# United States District Court
## Western District of Arkansas

U.S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

AUG 1 6 2006

CHRIS R. JOHNSON, CLERK

BY _____
DEPUTY CLERK

**UNITED STATES OF AMERICA**
       v.

**MICHAEL T. JACKSON**

## CRIMINAL COMPLAINT

CASE NUMBER: 2:06M2030-001

(Name & address of defendant)

I, Timmy K. Akins, the undersigned, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about **August 15, 2006**, in **Sebastian** County, in the **Western** District of **Arkansas** defendant(s) did commit the offense of, (track statutory language of offense)

**False Information and Threats,**

in violation of Title __49__ United States Code Section (s), __46507__.

I further state that I am a(n) **Special Agent** and that this complaint is based on the following facts:
Official Title

**SEE ATTACHED AFFIDAVIT.**

Continued on the attached sheet and made part hereof:   ☒ Yes   ☐ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

August 16, 2006            at      Fort Smith, Arkansas
Date                              City & State

Beverly S. Jones, U. S. Magistrate Judge        _____
Name & Title of Judicial Officer                Signature of Judicial Officer

## AFFIDAVIT

I, Timmy K. Akins, being duly sworn deposes and states as follows:

1. I have been employed as a Special Agent with the FBI for over eleven years and am presently assigned to the Little Rock Division, Fort Smith Resident Agency.

2. This affidavit is submitted in support of a criminal complaint charging Michael T. Jackson (hereinafter referred to as Michael) with violating Title 49 U.S.C. Section 46507, False Information and Threats.

3. The information contained in this affidavit is based upon my own personal knowledge, as well as information provided to me by fellow law enforcement officers of the FBI, the Transportation Safety Administration (TSA), the Fort Smith Police Department, on information provided by witness statements, and on the experience and background of your affiant. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, your affiant has not included each and every fact known to him concerning this investigation. Your affiant has set forth only those facts which your affiant believes are necessary to establish probable cause that Michael has violated Title 49 U.S.C. Section 46507, False Information and Threats.

4. On August 15, 2006, at approximately 1:04 p.m., a Transportation Safety Administration Officer (TSA), stationed at the Fort Smith Regional Airport, received a telephone call at (479) 484-8135 which is a published number but without caller identification features. The caller stated "you have a bomb on two planes going to Texas - catch them if you can."

5. On August 15, 2006, at approximately 1:15 p.m., the same TSA officer received another telephone call at (479) 484-8135 from an individual that stated "I just put my daughter on the airplane going to Texas and I received an anonymous call that the airplane got a bomb." The same TSA officer stated the individual identified himself as Fisher and advised he was at a pay phone located at the laundry mat near the intersection of Albert Pike and Kelly, Fort Smith, Arkansas. The caller further explained that he was not the one that made the threat. The same TSA officer advised the voice sounded like that of the 1:04 p.m. caller.

6. On August 15, 2006, between 1:19 p.m. and 1:21 p.m., an individual employed by the Fort Smith Air Traffic Control, received a telephone call through main number (479) 649-2400 that was forwarded to her extension which is (479) 649-2417. The caller stated there were two bombs on two planes heading to Texas. You need to stop them. The same employee responded "Excuse me." The caller repeated that there were two bombs on two planes headed to Texas and "you need to stop them, bitch." The same employee said the caller's voice was deep and steady.

7. Upon arriving at the airport, your affiant learned that the wife of Michael T. Jackson, and her two sons, Minor No. 1 and Minor No. 2, were occupants of an outbound flight to DFW Airport with a final destination of Hawaii. A relative of Michael T. Jackson contacted a Fort

Smith Regional Airport Administrative Assistant wanting to locate the defendant's wife. As your affiant was attempting to interview the Fort Smith Regional Airport Administrative Assistant, the defendant's relative again called Fort Smith Regional Airport. Your affiant spoke with the defendant's relative. The defendant's relative stated the defendant's wife was taking Minor No. 1 and Minor No. 2 and leaving Michael T. Jackson. The defendant's relative explained that Michael T. Jackson was an abusive husband. The defendant's relative drove the defendant's wife to the Fort Smith Regional Airport. Immediately prior to entering the gated area of the airport, the defendant's wife used the defendant's relative's cellular telephone to contact Michael T. Jackson at a cellular telephone belonging to an individual known to your affiant. Later, the defendant's wife called the defendant's relative from a pay phone located at the airport stating everyone had been removed from the aircraft due to a threat. The defendant's wife surmised to the defendant's relative that Michael T. Jackson may have called in a threat to the airport.

8. Your affiant learned from a Fort Smith Police Department Officer assigned to work at the airport that a male driving a black Cadillac was observed at the airport. The male departed the airport with a female and two children, believed to be the defendant's wife and Minor No. 1 and Minor No. 2. The defendant's wife's luggage remained at the airport.

9. In an attempt to locate and interview Michael T. Jackson, your affiant learned that Michael T. Jackson had been living with an individual at 5300 Wilson, Fort Smith, Arkansas. During an interview with a person Michael T. Jackson had been living with, it was learned that Michael T. Jackson did not have a cellular telephone. However, it was learned that the daughter of the person Michael T. Jackson was living with had a cellular telephone which showed that the defendant's relative had called this number at 12:53 p.m. this date.

10. A Fort Smith Police Officer was dispatched to 5300 Wilson to locate Michael T. Jackson. In the vicinity of this address, Michael T. Jackson's black Cadillac was encountered. Michael T. Jackson was detained and transported to the Fort Smith Police Department for questioning. Your affiant and Fort Smith Police Department Detective Greg Smithson interviewed Michael T. Jackson. Michael T. Jackson explained that his wife was taking Minor No. 1 and Minor No. 2 to Hawaii. Michael T. Jackson received a telephone call from his wife saying she was about to board the airplane. Michael T. Jackson contacted the Fort Smith Police Department to determine how he could stop her from leaving with Minor No. 1 and Minor No. 2. He was told that he would have to obtain an attorney and follow the legal process. Michael T. Jackson stated he obtained a telephone number from a telephone book for the airport. He traveled to a pay phone at I-540 and Kelly and called the airport. He spoke to a male and stated he was checking on his niece who was on a flight that may have had a bomb threat. He told the airport official that he was Vernie Fisher. Michael T. Jackson said he traveled to the Fort Smith Regional Airport in an effort to locate his wife and persuade her not to leave. He found his wife in the airport cafeteria and she agreed to get in the car with him. Michael T. Jackson and his wife traveled to Carol Ann Cross Park where Michael and his wife discussed their situation. Michael provided a written statement admitting to the above. Michael denied making any other call to the airport.

11. FBI SAs Michael W. Marquet and Jason L. Hill interviewed Michael T. Jackson's wife. His wife advised that prior to entering the gated area of the airport, she used a relative of Michael T. Jackson's cellular telephone to contact Michael. Michael became hysterical when she explained she was leaving him and stated he was going to commit suicide. He was angered that a relative of his and his wife's parents were helping her leave for Hawaii. His wife hung up on Michael. Michael T. Jackson's wife explained that an airport official said the flight was delayed. Jackson's wife contacted a relative of the defendant from an airport pay phone. While talking to Jackson's relative, she saw Michael drive by the airport. The defendant's wife agreed to go with Michael to Carol Ann Cross Park. While at the park, Michael asked his wife if she knew why the airplane had been delayed. He said he called the airport and stopped the flight. The defendant's wife became angry and asked Michael why he did that. Michael told his wife he would probably be going to jail because this was a federal offense.

12. Based upon the information provided herein, your affiant has probable cause to believe, and does believe, that on August 15, 2006, Michael T. Jackson violated Title 49 U.S.C. Section 46507, False Information and Threats.

Further your affiant sayeth not.

Timmy K. Akins
Special Agent
Federal Bureau of Investigation
Fort Smith, Arkansas

Subscribed and sworn before me this __16th__ day of August, 2006.

United States Magistrate Judge
Beverly Stites-Jones